UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Susana Salinas Solis, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Case No.: 1:17-cv-00798 |
| | ) |
| vs. | ) Judge Michael R. Barrett |
| | ) |
| Capital Grille Holdings, Inc., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**ORDER**

This matter is before the Court on Defendants Alejandro Murillo and Overnight Cleanse, LLC's Rule 12(b)(6) Motion to Dismiss and Rule 12(f) Motion to Strike (Doc. 54), to which Plaintiffs have responded (Doc. 55). For the reasons that follow, the motion will be GRANTED in part and DENIED in part. On its own motion, the Court will STRIKE Count V of the Amended Complaint.

**I.  BACKGROUND**

**A. Procedural Posture**

This civil action was commenced on November 27, 2017, when Plaintiffs Susana Salinas Solis and Jairo Bartolon Roblero filed suit against Capital Grille Holdings, Inc. and Alejandro Murillo alleging violations of the federal Fair Labor Standards Act ("FLSA") and Ohio wage laws. (*See* Doc. 1 (Counts I, II, IV, and V)). They also alleged discrimination based on national origin and ethnicity in violation of Ohio law. (*Id.* (Count III)). Both Capital Grille and Murillo answered. (Docs. 5, 9). Capital Grille later filed a motion for leave to file an amended answer, a crossclaim against Defendant Murillo and

1

a third-party complaint against Overnight Cleanse, LLC. (Doc. 27.) In support of its motion, filed by the deadline established in the Agreed Amended Scheduling Order (Doc. 26), Capital Grille stated:

> Plaintiffs' Complaint alleges claims involving unpaid wages from work performed for their employer, Overnight Cleanse, LLC ("Overnight Cleanse") pursuant to a contract Overnight Cleanse had entered into with Capital Grille. **As Plaintiffs' employer, Overnight Cleanse is a necessary party under Fed. R. Civ. P. 19. Capital Grille therefore seeks to join Overnight Cleanse so that Plaintiffs' true employer may be assessed its potential liability** and to ensure Capital Grille can seek indemnification for any alleged wrongful acts.
>
> **Plaintiffs have already included Overnight Cleanse's agent, Alejandro Murillo, who was acting on Overnight Cleanse's behalf at all times relevant to the Complaint and is, upon information and belief, a full or partial owner of Overnight Cleanse.** Since **Mr. Murillo is a potentially liable employer regarding Plaintiffs' alleged claims**, Defendant seeks to assert its right to indemnification against Mr. Murillo.

(*Id.* at PageID 88–89 (emphasis added)). The Court granted Capital Grille's unopposed motion for leave on May 3, 2019 (Doc. 28). Defendant Murillo filed an amended answer to Plaintiffs' Complaint and Defendant Capital Grille's crossclaim on May 23, 2019. (Doc. 33). Third-Party Defendant Overnight Cleanse filed an answer and counterclaims to Capital Grille's Third-Party Complaint on July 18, 2019. (Doc. 35). On August 22, 2019, Capital Grille filed its answer to Overnight Cleanse's counterclaims. (Doc. 37). Notwithstanding Capital Grille's allegations, Plaintiffs did not seek leave to amend their Complaint to include Overnight Cleanse as a defendant.

Defendant Murillo and, oddly, Third-Party Defendant Overnight Cleanse filed a Rule 12(c) Motion for Judgment on the Pleadings on September 30, 2019, asking the Court to dismiss Plaintiffs' claims against them. (Doc. 38). Overnight Cleanse's joinder

in this motion was surprising, of course, because Plaintiffs had sued Murillo only.  In any event, Murillo argued that he was entitled to judgment in his favor, because all specific allegations of wrongdoing were directed at Capital Grille.  "Plaintiffs explicitly allege [that Capital Grille] was their employer, supervisor, and [ was] responsible for violating the FLSA, Ohio wage laws, and discrimination."  (*Id.* at PageID 184).  Plaintiffs responded (Doc. 39), but not exactly in opposition.  They argued that Capital Grille "used" Murillo to violate federal and state wage laws; suggested that judgment should not issue with Capital Grille's crossclaim (against Murillo) and third-party complaint (against Overnight Cleanse) pending; and referenced their purported state common law claim against Murillo for "passing bad checks."  (*Id.* at PageID 209).

In due course, Plaintiffs and Capital Grille reached a confidential settlement, which this Court approved on March 25, 2020.  (*See* Docs. 48, 51).  Concurrently, Capital Grille, Murillo, and Overnight Cleanse filed a Joint Stipulation of Dismissal with Prejudice as to all claims asserted by and between them.  (Doc. 50).  Left for resolution, then, were any remaining claims against Defendant Murillo.  To this end, and as a follow-up to the Status Conference held on March 25, 2020, the Court ordered Plaintiffs to file a motion to amend their Complaint, if that remained their intention, on or before April 8, 2020.  (*See* 03/31/2020 Notation Order).  Two weeks past that deadline and in contravention of Fed. R. Civ. P. 15(a)(2)[1], Plaintiffs instead proceeded to file an Amended Complaint on April 22, 2020.  (Doc. 52).  In it, Murillo remains a defendant, with Overnight Cleanse now added.  (*See id.*).  Rather than strike the pleading, in the

---

[1] "In all other cases [referring to Rule 15(a)(1)], **a party may amend its pleading only with** the opposing party's written consent or **the court's leave**.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2) (emphasis added).

3

interest of judicial economy the Court allowed it, set a deadline by which Defendants should respond, and denied as moot the pending (Doc. 38) Rule 12(c) motion. (Doc. 53). Defendants Murillo and Overnight Cleanse timely filed the instant motion (Doc. 54), which is now ripe for decision.

### B. Facts Alleged in the Amended Complaint[2]

Defendant Overnight Cleanse hired Plaintiffs in 2015 as part of an overnight crew to clean a Capital Grille restaurant located in Cincinnati, Ohio. (Doc. 52 ¶¶ 12–16). Plaintiffs worked 10-to-12 hours per day but were not compensated for all the hours they worked or paid overtime compensation for hours worked in excess of 40 hours per week. (*Id.* ¶¶ 19–20). Overnight Cleanse paid Plaintiffs through direct deposit. (*Id.* ¶ 21). Several checks, though, were returned for insufficient funds. (*Id.*). During a deposition taken in the course of this litigation, Defendant Murillo admitted to owing Plaintiffs at least $9,000 in unpaid wages.[3] (*Id.* ¶ 22).

Plaintiffs allege the following statutory violations against Overnight Cleanse: failure to pay for all hours worked and overtime accrued in violation of the FLSA (Count I); national origin and ethnicity discrimination in violation of Ohio Rev. Code § 4112 *et seq.* (Count II); and violation of Ohio Rev. Code § 4113.15, the Ohio Prompt Pay Act (Count III). Plaintiffs further allege that both Overnight Cleanse and Murillo committed common law fraud (Count IV) and passed bad checks in violation of Ohio Rev. Code § 2913.11 (Count V). Finally, Plaintiffs allege that the Court should "pierce the corporate

---

[2] As indicated, Defendants' Motion is brought pursuant to Fed. R. Civ. P. 12(b)(6). For purposes of deciding it, therefore, the Court accepts as true the factual allegations made by Plaintiffs in their Amended Complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[3] Defendant Murillo's deposition has not been filed with the Clerk.

4

veil" and find that Defendant Murillo is personally liable for any violations attributable to Defendant Overnight Cleanse (Count VI)).

Unlike in the original Complaint, the Amended Complaint does not allege a minimum wage violation under Ohio Const. art. II, § 34a[4] or Ohio Rev. Code § 4111.02[5], or an overtime violation under Ohio Rev. Code § 4111.03(A)[6]. The claims for fraud, passing bad checks, and piercing the corporate veil are new.

## II. DISCUSSION AND ANALYSIS

### A. Overnight Cleanse's Motion to Dismiss Based on Rule 15(c)

Overnight Cleanse argues that the Amended Complaint, filed in 2020, should be dismissed because the claims asserted against it are time-barred.[7]

The only specific statute of limitations cited by Overnight Cleanse is the one applicable to Plaintiffs' FLSA claim. A claim under the FLSA must be brought within two years after the cause of action accrues. 29 U.S.C. § 255(a). In cases of a willful violation, the limitations period is extended to three years. (*Id.*). Plaintiffs allege that their employment relationship with Overnight Cleanse began in 2015.[8] They include no allegations as to when it ended.[9] The parties appear to agree, however, that Plaintiffs'

---

[4] (*See* Doc. 1 (¶¶ 38-43) at PageID 6–7).
[5] (*See* Doc. 1 (¶¶ 55, 57) at PageID 8–9).
[6] (*See* Doc. 1 (¶¶ 53–54, 56, 58) at PageID 8–9).
[7] Statute of limitations defenses can be raised in Rule 12(b)(6) motions to dismiss. *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 500 (S.D. Ohio 2012) ("Dismissal under Fed. R. Civ. P. 12(b)(6) based on a statute-of-limitations bar is appropriate when the complaint shows conclusively on its face that the action is indeed time-barred.").
[8] (*See* Doc. 52 (¶ 14) at PageID 502).
[9] The Amended Complaint alleges simply that Plaintiffs were "constructively terminated" without reference to any time band. (*See* Doc. 52 (¶ 39) at PageID 506 ("Defendant Overnight Cleanse constructively terminated Plaintiffs by not paying their wages or by paying them with checks that Overnight Cleanse knew, or should have known, would not be honored by the issuing bank.")). Plaintiffs' response to Defendants' motion states that they were employees from 2015 to 2017 (Doc. 55 at PageID 527), but,

FLSA claim against Overnight Cleanse is timely *only* if it relates back to the date when the original Complaint against Capital Grille and Murillo was filed.

Fed. R. Civ. P. 15(c)(1) governs relation back of amendments. An amendment that "changes the party" to an action will relate back if three requirements are met. First, the claim against the party must arise "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B), (C). Second, the party must have received notice of the action within 90 days[10] of the filing of the original Complaint. Fed. R. Civ. P. 15(c)(1)(C)(i) ("within the period provided by Rule 4(m) for serving the summons and complaint"). Third, the party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).

Rule 15(c)(1)(C) permits an amendment to relate back when a plaintiff seeks to *substitute* a correct party for a previously improperly named defendant or to correct a misnomer. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 557 (2010).[11] Said another way, "[a] 'mistake,' as the term is used in Rule 15(c)(1)(C), occurs where the wrong party is blamed while the real culprit remains unknown, and also where the plaintiff has full knowledge of all relevant actors but lists the technically incorrect parties." *Wanke v. Invasix, Inc.*, No. 3:19-cv-0692, 2020 WL 2542594, at *12 (M.D. Tenn. May 19, 2020) (citing *Pullins v. Klimley*, No. 3:05-CV-082, 2008 WL 85871, at *11 (S.D. Ohio Jan. 7, 2008)).

---

under *Twombly*, this Court is obliged to accept as true only the factual allegations made by Plaintiffs in the Amended Complaint itself. *See Twombly*, 550 U.S. at 555.
[10] Both Plaintiffs and Defendants refer to 120 days as the time limit for service. Fed. R. Civ. P. 4(m) was amended in 2015 to reduce the presumptive time for serving a defendant from 120 days to 90 days.
[11] Neither Defendants nor Plaintiffs cited *Krupski* in their memoranda.

6

Plaintiffs, however, are not looking to *substitute* Overnight Cleanse for any other defendant. Rather, they settled with Capital Grille and now wish to *add* Overnight Cleanse as another source of recovery. Under Sixth Circuit precedent, this is impermissible. "An amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." *In re Kent Holland Die Casting & Plating*, 928 F.2d 1448, 1449 (6th Cir. 1991) (citation and quotation omitted). The facts here are similar to those in *Venezia v. 12th & Div. Properties, LLC*, No. 3:09-cv-430, 2010 WL 3122787, at *1 (M.D. Tenn. Aug. 6, 2010), decided post-*Krupski*, where the plaintiffs sought to add as defendants two additional developers in litigation brought under the Interstate Land Sales Full Disclosure Act. Their motion to amend their complaint was denied as futile, because there was no "mistake." *Id.* at *5. Rather, they wanted to continue to pursue remedies against the original developers and *add in the new developers. Id.* ("Plaintiffs in this case were apparently not mistaken about either the existence or the identity of the New Defendants—they were simply unaware of the alleged extent of their involvement in the development of the [project]."); *see also DuBois v. Pickoff*, No. 3:09cv230, 2011 WL 1233665, at *13 (S.D. Ohio Mar. 28, 2011) (district courts have reaffirmed the principle that adding parties is impermissible under the Sixth Circuit's interpretation of Rule 15(c), even post-*Krupski*).

Plaintiffs' response to Defendants' arguments is glib, claiming that Sixth Circuit precedent is "obviously contrary to the plain language of Rule 15[.]" (Doc. 55 at PageID 529). They do not address *In re Kent Holland* at all. They only mention *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313 (6th Cir. 2010), also cited by Defendants,

7

a case in which new *plaintiffs* challenged the district court's holding that their claims did not relate back to the filing date of the original plaintiffs' claims under Rule 15(c). The *Asher* court found the position of the new plaintiffs to be "untenable." *Id.* at 318. Citing *In re Kent Holland*, the Sixth Circuit reiterated, "[T]he precedent of this circuit clearly holds that 'an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.'" *Id.* "Although the new plaintiffs are correct that our **prior decisions** applying this rule **involved plaintiffs' attempts to add defendants after the statute of limitations expired**, they offer no authority or persuasive justification for treating plaintiffs differently from defendants and allowing untimely plaintiffs to ride piggyback on the claims of timely plaintiffs." *Id.* (emphasis added).

Before this Court is a clear case of "plaintiffs' attempts to add defendants after the statute of limitations expired." *In re Kent Holland* applies and, accordingly, Plaintiffs' Amended Complaint does not relate back under Rule 15(c). Plaintiffs' FLSA claim against Defendant Overnight Cleanse (Count I), therefore, is untimely. So too, then, is Plaintiffs' claim under Ohio Rev. Code § 4113.15, the Ohio Prompt Pay Act (Count II). *See Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385 n.1 (6th Cir. 2016) (Ohio Prompt Pay Act claim "rises and falls" with FLSA claim).

Without any elaboration, Overnight Cleanse makes the perfunctory observation that Plaintiffs' claims of discrimination (Count II) and "passing bad checks" (Count V) also are untimely. Yet Overnight Cleanse fails to identify any other applicable statutes of limitations and the Court will not manufacture an argument on its behalf. Moreover, the Court notes that Overnight Cleanse does not at this stage challenge Plaintiffs'

8

common law claim for fraud. Accordingly, while the Court will grant Overnight Cleanse's Rule 15(c) motion as to Counts I and III, it will deny it—without prejudice—as to Counts II and IV. As discussed *infra*, the Court, on its own motion, will strike Count V as to both Overnight Cleanse and Murillo.

### B. Defendants' Motion to Dismiss Based on Rule 12(b)(6)

#### 1. Standard of Law

Rule 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a dismissal motion, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A district court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true. *Id.*; *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014).

#### 2. Plaintiffs' Amended Complaint Plausibly Alleges FLSA and OPPA Claims Against Murillo

Defendants' Rule 12(b)(6) motion submits that Plaintiffs' Amended Complaint fails to plausibly allege any FLSA (Count I) or Ohio (Count III) wage claims against them. Inasmuch as the Court previously has determined that the federal and state

9

wage claims against Overnight Cleanse should be dismissed under Rule 15(c), the undersigned will consider this argument only against Murillo. Further, the Court notes that Murillo seeks dismissal only as to the federal and state wage claims. He does not address the claims for discrimination (Count II), fraud (Count IV), "passing bad checks" (Count V), and "piercing the corporate veil" (Count VI), and, therefore, these claims remain.

Murillo contends that the Amended Complaint is factually deficient as to his status as "employer" as well as Plaintiffs' status as "employees." The Court disagrees.

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "'Employ' includes to suffer or permit to work." *Id.* § 203(g). In light of the remedial purpose of the FLSA, courts should be guided by the standard that "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 807 (6th Cir. 2015) (cleaned up). Under the FLSA, the term "employer" is also broadly construed to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).[12] "The remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (quotation and citation omitted)). "In deciding whether

---

[12] Moreover, it is clear "[t]he FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Id.* at 965 (quoting *Donovan v. Agnew*, 712 F.2d 1059, 1511 (1st Cir. 1983)); see *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994) (citing *Elliott Travel*, chief executive officer held jointly liable with the corporation for damages awarded for failure to pay overtime).

a party is an employer, 'economic reality' controls rather than common law concepts of agency." *Id.* (citing *Goldberg v. Whitaker House Cooperative*, 366 U.S. 28, 33 (1961)). Factors to consider with regard to the employer-employee relationship are: 1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his or her skill; the degree of the alleged employer's right to control the manner in which the work is performed; and 6) whether the service rendered is an integral part of the alleged employer's business. *Keller*, 781 F.3d at 807. Other factors ask whether the alleged employer had authority to hire or fire the worker and whether the alleged employer "maintained" the worker's employment records. *Id.* No factor is solely determinative. *Id.*

Murillo asserts that Plaintiffs' Amended Complaint is defective because it is "devoid" of any allegations that support the "economic reality" factors. (Doc. 54 at PageID 520). *Twombly/Iqbal* does not require this, however. The "economic reality" factors typically are evaluated at summary judgment, as was the case in *Keller*. 781 F.3d at 806. They also largely test for whether a worker is an employee versus an independent contractor, as was also the case in *Keller*. *Id.* at 806–16. To be sure, the Amended Complaint is not a model pleading.[13] But guided by the remedial purpose of the FLSA, the Court concludes that its allegations suffice. While it clearly contains some formulaic recitations, the Amended Complaint nonetheless states that Overnight

---

[13] Plaintiffs concede as much. (Doc. 55 at PageID 532 ("For the sake of brevity, many other allegations of an employer-employee relationship in the Amended Complaint have been omitted.")).

Cleanse, through its agent Murillo, "was responsible for hiring and employing janitorial staff to perform cleaning services for Capital Grille restaurants." (Doc. 52 (¶ 12) at PageID 502). Overnight Cleanse specifically "was hired to procure and oversee labor performed" at the Cincinnati location and Plaintiffs were two of the three individuals initially hired to work there. (*Id.* (¶¶ 14, 15)). Further, Plaintiffs worked an overnight shift, ten-to-twelve hours a day, and did not receive compensation for all hours worked or overtime. (*Id.* (¶¶ 16, 19, 20) at PageID 503)). And Plaintiffs were not "otherwise exempt." (*Id.* (¶ 28) at 504). In addition, several "direct deposit" paychecks were returned for insufficient funds and Murillo admitted in deposition testimony that he owes Plaintiffs "at least $9,000 in unpaid wages." (*Id.* (¶¶ 21, 22) at PageID 503). Read together, these allegations establish a plausible claim that Murillo, acting as an agent for Overnight Cleanse, employed Plaintiffs but failed to pay them all the wages to which they were entitled under federal and state wage laws. Thus, Murillo's Rule 12(b)(6) motion to dismiss Counts I and III of the Amended Complaint will be DENIED.

### C. Defendants' Motion to Strike Based on Rule 12(f)

Fed. R. Civ. P. 12(f)(1) provides that a court "may [on its own or on motion made by a party] strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous material." Defendants maintain that the Amended Complaint should be dismissed because it was filed for an "improper" purpose—that is, "to join new parties and allege new theories against Defendants after settling with Capital Grille." (Doc. 54 at PageID 522). This argument, however, is exactly the one made in support of dismissal under Rule 15(c), which the Court already has considered and

ruled in favor of Overnight Cleanse as to the federal and state wage claims alleged against it.

On its own motion, however, the Court will strike as "immaterial" Count V. In Count V, titled "Passing Bad Checks", Plaintiffs allege that Defendants "issued checks for wages to Jairo and Susana that were refused by the drawee bank for insufficient funds[]" and Defendants did not thereafter "discharge their liability to Jairo and Susana within ten days of the notice of dishonor." (Doc. 52, Amended Complaint at ¶¶ 61, 62)). Plaintiffs contend that these actions violated Ohio Rev. Code § 2913.11, which provides in pertinent part:

> (B) No person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored . . . .
>
> (C) For purposes of this section, a person who issues or transfers a check or other negotiable instrument is presumed to know that it will be dishonored if either of the following occurs:
>
> . . . .
>
> (2) The check or other negotiable instrument was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer, indorser, or any party who may be liable thereon is not discharged by payment or satisfaction within ten days after receiving notice of dishonor.

Ohio Rev. Code § 2913.11(B), (C)(2).

Passing bad checks, as described in § 2913.11, is a criminal offense for which one can be prosecuted. It allows a victim to file a criminal complaint, *see generally Wilmouth v. Lowes Home Ctrs., Inc.*, No. 2003-T-0160, 2004 WL 2860362, at *1 (¶¶ 5, 7) (Ohio Ct. App. 11th Dec. 10, 2004), but not to bring a civil suit. Although stricken as

a stand-alone cause of action, this ruling does not preclude Plaintiffs from introducing dishonored checks as evidence of nonpayment of wages.

### III. CONCLUSION

For the foregoing reasons, Defendants Alejandro Murillo and Overnight Cleanse, LLC's Rule 12(b)(6) Motion to Dismiss and Rule 12(f) Motion to Strike (Doc. 54) is **GRANTED in PART and DENIED in PART**. Counts I, II, III, IV, and VI remain against Murillo. Counts I and III are **DISMISSED** as to Overnight Cleanse, however, with Counts II and IV remaining. On its own motion, the Court **STRIKES** Count V as immaterial under Fed. R. Civ. P. 12(f)(1), because the predicate statute cited, Ohio Rev. Code § 2913.11, anticipates criminal prosecution only.

**IT IS SO ORDERED.**

/s/ *Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court